# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>)     **Case No. 15-cv-3487** |
| v. | )<br>)     **Judge Kennelly**<br>) |
| ELITE SEWER & WATER CONTRACTORS, INC., an Illinois corporation, ELITE CONTRACTING COMPANY LLC, an Illinois corporation, and DANIEL DONNELLY, individually, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MOTION FOR ENTRY OF JUDGMENT

NOW COME Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the

Health and Welfare Department of the Construction and General Laborers' District Council of

Chicago and Vicinity, James S. Jorgensen, Administrator of the Funds, (collectively "Funds"),

by and through their attorney, Patrick T. Wallace, and hereby move this Court to enter judgment

in sum certain on the defaulted Settlement Agreement. In support of this Motion, Plaintiffs state

as follows:

1.     The Parties entered into a Settlement Agreement and the Court dismissed the

matter without prejudice and with leave to reinstate retaining jurisdiction to enforce the terms of

the Settlement Agreement

2. On September 7, 2017, the Court reinstated the case pursuant to Plaintiffs' Motion advising that Defendants were in default on the terms of the Settlement Agreement, Installment Note and Guaranty of Payment and Indemnification

3. Defendants Elite Sewer & Water Contractors, Inc. and Daniel Donnelly have failed to make any of the scheduled payments due under the Installment Note and Guaranty of Payment and Indemnification. See Affidavit of James Fosco, attached hereto as Exhibit A, ¶¶ 2 and 3. Accordingly, the Funds are entitled to judgment in favor of the Funds and against Defendants Elite Sewer & Water Contractors, Inc. and Daniel Donnelly in the amount of $66,812.09 representing $54,815.93 in benefit contributions pursuant the defaulted Installment Note and Guaranty of Payment and Indemnification, $10,327.16 in wage payments due under the terms of the Settlement Agreement, and $1,669.00 of additional attorneys' fees and expenses incurred by the Funds. See Declaration of Patrick T. Wallace, attached hereto as Exhibit B.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in favor of the Funds and against Defendants Elite Sewer & Water Contractors, Inc. and Daniel Donnelly in the amount of $66,812.09 representing $54,815.93 in benefit contributions, $10,327.16 in wage payments due, $1,669.00 of additional attorneys' fees and expenses and another relief that is deemed just and equitable.

Respectfully submitted,

November 22, 2017                    Laborers' Pension Fund, et al.

By: /s/ Patrick T. Wallace

Office of Fund Counsel
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned certifies that he served this Motion for Entry of Judgment on the addressees noted below via the Court's electronic notification system this 22nd day of November 2017.

Tim Biasiello
Law Offices of Tim Biasiello
617 West Devon Ave.
Park Ridge, IL 60068

James J. Macchitelli
Law Office James J. Macchitelli
1051 Perimeter Drive Suite 400
Schaumburg, IL 60173-5853

/s/ Patrick T. Wallace

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                                 )
          Plaintiffs, )     Case No. 15-cv-3487
                                   )
    v. )     Judge Kennelly
                                   )
ELITE SEWER & WATER CONTRACTORS, )
INC., an Illinois corporation, ELITE )
CONTRACTING COMPANY LLC, an Illinois )
corporation, and DANIEL DONNELLY, )
individually, )
                                   )
          Defendants. )

## AFFIDAVIT OF JAMES FOSCO

     JAMES FOSCO, being first duly sworn on oath, deposes and states as follows:

    1.    I am a Field Representative employed by the Laborers' Pension Fund and the

Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago

and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-

referenced action. My responsibilities include oversight of the collection of amounts owed by

Defendant Elite Sewer & Water Contractors, Inc. (hereinafter the "Company"). This Affidavit is

submitted in support of the Laborers' Funds' Motion for Entry of Judgment. I have personal

knowledge regarding the statements contained herein.

    2.    Attached hereto as Exhibits A-1 and A-2 are true and accurate copies of an

Installment Note and Guaranty of Payment and Indemnification. No payments have been made



EXHIBIT
A

under the Installment Note. Accordingly, Elite Sewer & Water Contractors, Inc. and Daniel Donnelly owe $54,815.93 comprised of:

(a)  $53,414.18 in payments scheduled under the Note; and

(b)  $1,401.75 in liquidated damages on the unpaid July through November 2017 installments.

3.  Defendants have also failed to make the wage payments due under the Settlement Agreement attached hereto as Exhibit A-3 totaling $10,327.16.

FURTHER AFFIANT SAYETH NAUGHT.

_James Fosco_
James Fosco

Subscribed and sworn to before me this 21st day of November 2017.

_Eugenia Mashos_
Notary Public

"OFFICIAL SEAL"
EUGENIA MASHOS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 09/29/2020

2

# INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Elite Sewer & Water Contractor, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 4 of the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues:

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the revised audit period of <u>September 15, 2014 through April 30, 2016.</u>

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the revised audit period of <u>September 15, 2014 through April 30, 2016.</u>

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $19,252.16 to the Health and Welfare Fund (comprised of $13,869.73 in delinquent contributions, $2,249.98 in attorney's fees and costs, $735.00 in audit costs and $2,397.45 in interest) (based on an interest rate of 12%). The Company will pay $9,178.98 to the Retiree Health and Welfare Fund (comprised of $5,281.05 in delinquent contributions, $2,249.98 in attorney's fees and costs, $735.00 in audit costs and $912.95 in interest). The Company will also pay $22,465.16 to the Pension Fund (comprised of $14,064.27 in delinquent contributions, $4,499.95 in attorney's fees and costs, $1,470.00 in audit costs and $2,430.94 in interest). All of these amounts shall be paid according to the schedule described below in paragraph 6.

2. The Company will also pay $694.90 to the Training Fund (comprised of $694.90 in delinquent contributions), $97.29 to the LECET Fund (comprised of $97.29 in delinquent contributions), $166.77 to the LDCMC Fund (comprised of $166.77 in delinquent contributions), $111.18 to the CAICA Fund (comprised of $111.18 in delinquent contributions) and $1,447.74 in union dues (comprised of $1,447.74 in delinquent contributions). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5.

3. The Company will also pay the Funds or the sum of $ 8,999.91 representing attorney fees and costs incurred by the Funds in Case No. 15 CV 03487. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. The Company will also pay the Funds the sum of $2,940.00 in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

5. The Company shall make a total of thirty six (36) payments under this Note. The first payment shall be made in the amount of $1,258.94 and shall be made on July 1, 2017. The second payment shall be made in the amount of $1,258.94 and shall be made on August 1, 2017. Thereafter, the Company shall make thirty-four (34) consecutive monthly payments commencing on September 1, 2017 and ending on June 1, 2020 in the monthly amount of $1,496.95 comprised of $566.24 per month to the Health and Welfare Fund, $269.97 to the Retiree Health and Welfare Fund and $660.74 per month to the Pension Fund.

6. The Company will remit all payments due under this note to the attention of James Fosco at the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154 unless otherwise directed.

7. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the



EXHIBIT A

7. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

8. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

9. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA if they perform or subcontract work.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _15th_ day of the _April_, 2017.

Elite Sewer & Water Contractor, Inc.

By: _Daniel Donnelly_

Title: _President_

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _[signature]_

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _____ by the undersigned, _____, (the "Guarantor"), to and for the benefit of the **LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (collectively, the "Funds").

WHEREAS, Elite Sewer & Water Contractor, Inc. (the "Company") has agreed to pay a total of **$53,414.18** to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty: and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note:

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the thirty-four (34) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty</u>. This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers</u>. Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.

1


EXHIBIT
A-2

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. <u>Independent Obligations.</u> The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. <u>Acceleration.</u> In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. <u>Effect of Bankruptcy.</u> This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. <u>Termination.</u> This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. <u>The Company's Financial Condition.</u> The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. <u>Expenses.</u> The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. <u>Delay, Cumulative Remedies.</u> No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. <u>Binding Effect.</u> This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder.

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

_____
_____
_____
_____

In Case of the Funds:

Collection Counsel
Patrick T. Wallace
Laborers Pension and Welfare Fund
Sub Office
111 W Jackson Blvd Ste 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided.

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_____       _____       _____

Social Security Number

_____       _____       _____

Date: 4-15-17        _____       _____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____

Dated: _____
4

# SETTLEMENT AGREEMENT

This Settlement Agreement by and between Elite Sewer & Water Contractors, Inc. (hereinafter "Elite Sewer"), Elite Contracting Company LLC ("Elite Contracting")(collectively, "Companies"), Daniel Donnelly ("Donnelly")(collectively with the Companies, the "Defendants") and the Laborers' Pension Fund, the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, related Funds, and James S. Jorgensen, not individually, but as Administrator of the Funds (collectively referred to hereinafter as the "Funds"), and the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") is hereby entered into;

**WHEREAS,** Elite Sewer is and was at all times relevant a party to a Collective Bargaining Agreement with the Union pursuant to which they also agreed to be bound to the terms the Funds' respective Agreements and Declarations of Trust, and are obligated to submit payment of benefit contributions, withhold and remit dues from the paychecks of Elite Sewer's employees and pay wages in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust;

**WHEREAS,** on April 21, 2015, the Funds filed a Complaint against Elite Sewer alleging that the Company had failed to submit current reports and contributions (Case No. 15 C 3487 in the Northern District of Illinois, Eastern Division);

**WHEREAS,** the Funds subsequently filed an Amended Complaint adding as Defendants Elite Contracting and Donnelly alleging that Elite Sewer and Elite Contracting were related entities and alleging the Defendant Donnelly was personally liable for the submission of incomplete or inaccurate benefit reports;

**WHEREAS,** on or about July 7, 2016, the Union filed Grievance No. 16-81 (hereinafter referred to as the "Grievance") alleging that the Companies had failed to pay the appropriate wages and benefit contributions on behalf of individuals who performed covered work during the audit period of September 15, 2014 through April 30, 2016;

**WHEREAS,** Defendants dispute the alleged liability for unpaid benefit contributions and wages as set forth in the Complaint, Grievance and the audit of the Companies' books and records for the period of September 15, 2014 through April 30, 2016.;

**WHEREAS,** the Parties wish to resolve the lawsuit and the pending Grievance and settle the amounts alleged owed without incurring any additional costs or expense of litigation;

**NOW THEREFORE,** for and in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    Elite Sewer will enter into an Installment Note to repay contributions alleging due and owing on the revised audit for the period of September 15, 2014 through April 30, 2016 agreeing to make Thirty-Six (36) installments as set forth under the terms of the Installment Note paying a total amount of Fifty-Three Thousand, Four Hundred and Fourteen and 18/100 Dollars ($53,414.18). Defendant Donnelly will enter into a Guaranty of Payment and Indemnification

EXHIBIT
A-3

7bc40a8f

contemporaneous with the signing of this Settlement Agreement and Installment Note agreeing to be response for payment of the amounts on the Installment Note. All checks due under the terms of the Installment Note and Guaranty of Payment and Indemnification shall be made payable to the "Laborers' Pension and Welfare Funds" and delivered to the attention of Mr. James Fosco at the Funds' Westchester office, 11465 Cermak Road, Westchester, Illinois 60154. The Installment Note and Guaranty of Payment and Indemnification are incorporated into the terms of this Settlement Agreement.

2       Elite Sewer shall pay a total of Ten Thousand Three Hundred Twenty Seven Dollars and Sixteen Cents ($10,327.16) in wages and audits costs on the wage audit as scheduled on Exhibit A attached hereto in four quarterly installments. The first quarterly installment shall be paid on July 1, 2017, the second quarterly installment shall be paid on October 1, 2017, the third quarterly installment shall be paid on January 1, 2018, and the fourth quarterly installment shall be paid on March 1, 2018. All wage checks shall be made payable to the individual employees as scheduled on Exhibit A, less all appropriate state and federal state withholdings and the appropriate dues withholding, and will be delivered to the attention of Ms. Christina Wernick at the at the Laborers' District Council, 999 McClintock, Suite 300, Burr Ridge, IL 60527 where they will be distributed by the Union to the appropriate employees. Elite Sewer shall pay the appropriate state and federal taxing agencies all monies withheld for tax purposes from the checks and withhold and remit the appropriate union dues in a check made payable to the "Laborers' Work Dues' Fund" and delivered to the attention of Ms. Christina Wernick at the Laborers' District Council, 999 McClintock, Suite 300, Burr Ridge, IL 60527. The audit costs shall be paid as scheduled in Exhibit A in checks made payable to the "Laborers' District Council" and delivered to the attention of Ms. Wernick at the above address.

3.      Elite Contracting hereby warrants and represents that it is out of business and has not performed or subcontracted any work after April 30, 2016.

4.      Elite Sewer hereby agrees and warrants that it is out of work and has not performed or subcontracted any work since April 1, 2016 but that if it works in the future, it will abide by the terms of the existing collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust.

5.      Nothing herein shall be construed to admit liability for Defendants.

6.      Upon execution of this Settlement Agreement, the Installment Note and Guaranty of Payment and Indemnification, the Parties shall file a Stipulation to Dismiss this matter without prejudice and request that the Court retain jurisdiction to enforce the terms of the Settlement Agreement, Installment Note and Guaranty of Payment and Indemnification. The dismissal shall be without prejudice up and through April 30, 2020. Thereafter, the matter shall be dismissed with prejudice except that the dismissal shall be without prejudice to the right of the Funds or the Union to conduct audits of the Companies' books and records from the period May 1, 2016 forward and to collect any amounts revealed as due and owing thereunder including, but not limited to, unpaid contributions, wages, dues, interest, liquidated damages and audit costs. Upon payment of all amounts due on the terms of this Settlement Agreement, the Installment Note and Guaranty of Payment and Indemnification, the Funds shall immediately release and discharge Defendants for any alleged obligations for unpaid contributions or wages owed or alleged owed for the audit period of September 15, 2014 through April 30, 2016. Nothing herein shall release

the Pension Funds' right to collect any alleged withdrawal liability including, but not limited to, any liability based on contributions paid pursuant to the Settlement Agreement or based on contributions reported paid by the Company for the period of May 1, 2016 forward.

7.      This Agreement shall be binding upon the heirs, successors, and assigns of the arties hereto. However, neither this Agreement nor its terms shall be construed as, or relied upon as, precedent as to the application of the relevant collective bargaining agreements or future dealings between the parties.

8.      The persons signing below represent that they are authorized to execute this Agreement and bind their respective entities and themselves to the terms hereof.

9.      This Agreement constitutes and represents the complete and entire agreement between the Parties. The terms of this Agreement may not be altered, modified, or supplemented except by a writing signed by each of the Parties.

10.      The Parties confirm and agree that: (a) this Agreement is the result of negotiation and compromise; (b) in interpreting this Agreement, no Party shall be considered to be the drafter of it; (c) no language shall be strictly construed against any Party; and (d) this Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

11.      The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

12.      This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

13.      This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

**For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and James S. Jorgensen, not individually but as Administrator of the Funds**

_____      Date:_____
James S. Jorgensen, Administrator

**For the Construction and General Laborers' District Council of Chicago and Vicinity**

_____      Date:      _____
Martin Flanagan, Grievance Director

Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

11.    The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

12.    This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

13.    This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and James S. Jorgenson, not individually but as Administrator of the Funds

_____       Date: _4/27/17_
James S. Jorgenson, Administrator

For the Construction and General Laborers' District Council of Chicago and Vicinity

_____       Date: _4-18-17_
Martin Flanagan, Grievance Director

For Elite Sewer & Water Contractors, Inc.

_____       Date: _4/17/17_
DANIEL Donnelly
(Print Name)

For Elite Contracting Company, LLC

_____       Date: _4/17/2017_
Adam Donnelly
(Print Name)

Daniel Donnelly

_____       Date: _4/17/17_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
    )
        Plaintiffs, )   Case No. 15-cv-3487
    )
    v. )   Judge Kennelly
    )
ELITE SEWER & WATER CONTRACTORS, )
INC., an Illinois corporation, ELITE )
CONTRACTING COMPANY LLC, an Illinois )
corporation, and DANIEL DONNELLY, )
individually, )
    )
        Defendants. )

## DECLARATION OF PATRICK T. WALLACE

I, PATRICK T. WALLACE, declare and state as follows:

1.     I am Fund Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Laborers' Funds"), Plaintiffs in the above-referenced action. This Declaration is submitted in support of the Laborers' Funds' Motion for Judgment.

2.     Shareholders of the law firms of Allison, Slutsky & Kennedy, out-of-house collection counsel for the Laborers' Funds, bill the Laborers' Funds at a rate of $225.00 per hour for shareholders, $195.00 per hour for associates, and $110.00 per hour for paralegals. Affiant, as in-house counsel for the Laborers' Funds, has first-hand knowledge that the foregoing hourly



rates have been found reasonable and have been awarded by many courts in collection proceedings.

3.      I received a Bachelor of Arts Degree from the University of Illinois at Urbana-Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995. I was admitted to the bar of the State of Illinois in November 1995 and to the bar of the United States District Court for the Northern District of Illinois in December 1995. I have also been admitted to the bar of the United States District Court for the Central District of Illinois. I was admitted to the Trial Bar of the Northern District of Illinois on September 20, 2000. From November 1995 to August 2000 I practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur & Eagle). In September 2000, I became Funds Counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

4.      Based on the foregoing, $225.00 represents a fair and reasonable market rate for my in-house legal services to the Funds in this matter.

5.      Jerrod Olszewski, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in May, 2002, and to the bar of the United States District Court for the Northern District of Illinois in May, 2002. From May, 2002 to December, 2004, he practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson, former out-of-house

2

counsel to the Laborers' Funds, with the majority of his work being spent representing the Laborers' Funds. In December, 2004, he became in-house counsel for the Laborers' Funds.

6. Based on the foregoing, $225.00 represents a fair and reasonable market rate for my and Jerrod Olszewski's in-house legal services to the Funds in this matter.

7. Amy Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

8. Based on the foregoing, $225.00 represents a fair and reasonable market rate for Amy Carollo's in-house legal services to the Funds in this matter.

9. G. Ryan Liska, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from University of Iowa in 1997 and a Juris Doctor from John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in November of 2002 and to the bar of the United States District Court for the Northern District in December of 2002. In March 2006, he was admitted to the bar of the United States District Court for the Central District of Illinois. From 2002 to September 2016 he practiced labor and employment law at various law firms. In October of 2016, he became in-house counsel for the Laborers' Funds.

10. Based on the foregoing, $225.00 represents a fair and reasonable market rate for G. Ryan Liska's in-house legal services to the Funds in this matter.

11.     Katherine Mosenson, in-house counsel for the Chicago Funds, received a Bachelor of Science Degree from the University of Illinois at Urbana-Champaign in 2009 and a Juris Doctor Degree from the John Marshall Law School in 2014. She was admitted to the bar of the State of Illinois in May, 2014, and to the bar of the United States District Court for the Northern District of Illinois in May 2015. From November 2014 through April 2015, she was an administrative law judge at the Illinois Labor Relations Board. In May 2015, she became in-house counsel for the Funds.

12.     Based on the foregoing, $195.00 represents a fair and reasonable market rate for Katherine Mosenson's in-house legal services to the Funds in this matter.

13.     Kelly Carson Burtzlaff, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Purdue University in 2005 and a Juris Doctor Degree from Chicago-Kent College of Law in 2013. She was admitted to the bar of the State of Illinois in May 2014 and to the bar of the United States District Court for the Northern District of Illinois in August 2015. In August 2015, she became in-house counsel for the Laborers' Funds.

14.     Based on the foregoing, $195.00 represents a fair and reasonable market rate for Kelly Carson Burtzlaff's in-house legal services to the Funds in this matter.

15.     Exhibit 1 attached hereto sets forth the time expended since July 11, 2017 by Fund Counsel on this matter. As set forth in that Exhibit, we have expended 7.00 hours totaling $1,575.00 in attorneys' fees and $94.00 in expenses totaling $1,669.00.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: ___11/21/17___                          _____
                                               Patrick T. Wallace

4

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL 60154

Invoice submitted to:
Elite Sewer & Water Contractors

November 21, 2017

Invoice #10279

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/11/2017 | PTW | Telephone conference with JF and CKW; letter; email; telephone call to Counsel. | 0.60 225.00/hr | 135.00 |
| 7/13/2017 | PTW | Email to J. Macchitelli. | 0.10 225.00/hr | 22.50 |
| 8/9/2017 | PTW | Email to J. Macchitelli re: payments. | 0.10 225.00/hr | 22.50 |
| 8/24/2017 | PTW | Preparation of Motion to Reinstate and Enforce Judgment; edits to Motion and Order; Telephone conference with KT. | 1.10 225.00/hr | 247.50 |
| 8/28/2017 | PTW | Telephone conference with clerk; email to KT; email to counsel. | 0.30 225.00/hr | 67.50 |
| 9/18/2017 | PTW | Telephone conference with counsel; review of file. | 0.30 225.00/hr | 67.50 |
| 9/21/2017 | PTW | Preparation of draft Motion for Rule to Show Cause. | 0.60 225.00/hr | 135.00 |
|  | PGL | Preparation of draft Order for Rule to Show Cause; preparation of Notice of Motion and exhibits. | 0.30 225.00/hr | 67.50 |
| 9/28/2017 | PTW | Telephone conference with J. Macchitelli. | 0.30 225.00/hr | 67.50 |
| 10/13/2017 | PTW | Email to J. Macchitelli. | 0.10 225.00/hr | 22.50 |



EXHIBIT
B-1

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/18/2017 | PTW | Appearance before Judge Kennelly; memo to file re: same; Telephone conference with J. Macchitelli. | 1.00 225.00/hr | 225.00 |
| 11/2/2017 | PTW | Appearance before Judge Kennelly; memo to file re: same. | 1.20 225.00/hr | 270.00 |
| 11/21/2017 | PTW | Preparation of Motion for Judgment and Affidavit of James Fosco. | 1.00 225.00/hr | 225.00 |

For professional services rendered      7.00     $1,575.00

Additional Charges :

10/4/2017 Attempted service of Orders for Rule to Show Cause (2).      94.00

Total additional charges      $94.00

Total amount of this bill      $1,669.00

Balance due      $1,669.00

## Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Paralegal | 0.30 | 225.00 | $67.50 |
| Patrick T. Wallace | 6.70 | 225.00 | $1,507.50 |